**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| NFINITY IP, LLC | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | _____ |
| VARSITY SPIRIT LLC, | ) | |
| | ) | |
| *Defendant.* | ) | |

**COMPLAINT**

Plaintiff Nfinity IP, LLC ("Nfinity" or "Plaintiff") for its Complaint against Defendant Varsity Spirit LLC ("Varsity" or "Defendant") alleges the following:

**NATURE OF THE ACTION**

1.     This Complaint is an action for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and under the statutes and common law of the State of Georgia.

2.     For over a decade, Nfinity has offered a variety of goods and services under its THE LEAGUE, WE ARE THE LEAGUE, and NFINITY CHAMPIONS LEAGUE trademarks ("Nfinity's Marks") and has developed an extensive, loyal customer base within the cheerleading and dance competitions and events industry.

3.     Through the actions explained herein, Varsity has willfully infringed on Nfinity's federal and common-law trademark rights in Nfinity's Marks by using nearly identical logos and trademarks in connection with services related to

Nfinity's, without Nfinity's consent, despite being aware of Nfinity's prior trademark rights, goods, and services.

4.     Varsity's actions are likely to cause confusion among the trade and consuming public, thereby causing irreparable harm to Nfinity. Nfinity is therefore entitled to all remedies allowed by law to halt Varsity's infringement and remedy the injury such infringement has caused.

## THE PARTIES

5.     Nfinity is a Georgia corporation with a principal place of business at 1440 Dutch Valley NE, Atlanta, Georgia 30324.

6.     Varsity is a Tennessee corporation with a principal place of business at 14460 Varsity Brands Way, Farmers Branch, Texas 75244.

## JURISDICTION AND VENUE

7.     This Court has federal question jurisdiction over this Complaint by virtue of 28 U.S.C. §§ 1331 and 1338.

8.     This Court has supplemental jurisdiction over the claims arising under the laws of the State of Georgia, pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal subject-matter claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

9.     This Court has personal jurisdiction over Varsity because Varsity has deliberately and intentionally marketed, sold, and rendered, or caused to be marketed, sold, and rendered, the services relevant to this action to consumers within the State of Georgia.

10.     Venue is proper in this Court under the provisions of 28 U.S.C. § 1391(b) and (c).

## STATEMENT OF FACTS

### A.     Nfinity's Trademark Rights

11.     For over two decades, Nfinity has been a global leader in the sales, manufacturing, and distribution of cheerleading-related equipment and merchandise including, but not limited to, tennis shoes, cheer-specific backpacks, apparel, accessories, and cheerleading uniforms.

12.     Capitalizing on the tremendous success and notoriety generated by its cheerleading equipment and merchandise sales, Nfinity began developing, arranging, and hosting a variety of cheerleading events, including instructional cheerleading combines and academies, as well as cheerleading and dance competitions and events—perhaps most notably, its "Nfinity Champions League" cheerleading competition series (more thoroughly described hereafter starting in paragraph 19).

13.     Since its inception, Nfinity has invested extensive time, effort, and financial resources, and absorbed commercial risk in developing its branded line of goods, apparel and series of cheerleading and dance competitions and events.

14.     To distinguish its goods and services from those of others, Nfinity uses several LEAGUE-formative marks, namely, Nfinity's Marks, in connection with arranging and conducting cheerleading and dance competitions and events, athletic bags, backpacks, and clothing, including shirts, sweatshirts, shorts, hats, and caps.

15.    As a result of these efforts, Nfinity enjoys a substantial and loyal customer following—both domestically and internationally—that associates the Nfinity brand with its high-quality cheerleading-related goods and services.

16.    As a further result of the fame and notoriety of Nfinity's cheerleading-related goods and services, its cheerleading and dance competitions and events have become a destination for the best competitive cheerleading teams from across the globe, ranging across multiple age classifications and differing states/countries of origin.

17.    Consequently, Nfinity's brand and its associated trademarks are distinctive, enjoy a highly favorable reputation amongst the members of participants in the relevant industry, and are a valuable symbol of Nfinity's goodwill.

18.    Nfinity has used Nfinity's Marks throughout the United States and offered and sold in commerce goods and services in connection with Nfinity's Marks for and associated with cheerleading and dance competitions and events and related goods.

19.    Since at least 2014, Nfinity has marketed, advertised, and promoted extensively a cheerleading competition series under the NFINITY CHAMPIONS LEAGUE trademark, including through a website at www.nfinity.com/pages/champions-league, and by maintaining an official presence on social media platforms, such as Facebook:



*Nfinity's Website*



*Nfinity's Facebook Page*

20.     Nfinity utilizes its NFINITY CHAMPIONS LEAGUE trademark on promotional and identifying materials at its "Nfinity Champions League" Competitions:

  

21.     Participants (and customers) of Nfinity's "Nfinity Champions League" cheerleading competition series, too, recognize the NFINITY CHAMPIONS LEAGUE mark's affiliation with Nfinity's "Nfinity Champions League" cheerleading competition series:

  

*Nfinity Champions League Participant Posting About "Nfinity Champions League" Cheerleading Competitions*

22.     Since at least the inception of its "Nfinity Champions League" cheerleading competition series, Nfinity also has utilized its WE ARE THE LEAGUE trademark on clothing, merchandise, and promotional material(s) in conjunction with and in promotion of its "Nfinity Champions League" cheerleading competition series. Such merchandise is either distributed by Nfinity to its participants or sold on-site at "Nfinity Champions League" cheerleading competitions series, as shown below:

  

*Clothing and Promotional Materials Bearing Nfinity's*
*WE ARE THE LEAGUE Trademark*



*Nfinity Pop-Up Store Located at an Nfinity Champions League Competition;*
*Shirt with "WE ARE THE LEAGUE" Trademark on Sale*

23. Two documentaries by Nfinity—titled "Nfinity Champions League Cheerleading Event (2014)" and "Nfinity Champions League Cheerleading Event (2015)" (*i.e.,* named using the NFINITY CHAMPIONS LEAGUE mark) document individual competitions within Nfinity's "Nfinity Champion League" cheerleading competition series:

 

*Cover Posters for Documentaries about Nfinity's "Nfinity Champions League" Cheerleading Competitions*

24.     In promotion of "Nfinity Champions League Cheerleading Event" (2014), Nfinity use the catch line: "Individually they are champions. Together they are **The League**" (emphasis added):



*Listing for "Nfinity Champions League Cheerleading Competition (2014)"*
*Found at: https://tubitv.com/movies/290934/nfinity-champions-league-2014*
*(last visited May 17, 2024)*

25.     And too, in promotion of at least the competition depicted in the "Nfinity Champions League 2 Cheerleading Event (2015)" documentary, cheer competitors are pictured wearing WE ARE THE LEAGUE brand t-shirts used to promote, advertise, and bring uniformity amongst competitors competing at the documented "Nfinity Champions League" cheerleading competition:

 

*Competitors at Nfinity Champions League Competition wearing "WE ARE THE LEAGUE"*
*t-shirts; as depicted in "Nfinity Champions League 2 Cheerleading Event (2015)"*

26.    Nfinity has established rights in and to its Nfinity's Marks through its continuous and substantially exclusive use in interstate commerce in connection with its "Nfinity Champions League" cheerleading competition series, rights that Varsity was aware of prior to first using its first use of any LEAGUE-formative marks.

27.    Thus, Nfinity is using Nfinity's Marks in connection with its goods and services, namely, the arrangement and conducting of cheerleading and dance competitions and events and the distribution and sale of cheerleading clothing, apparel, and merchandise.

28.    Nfinity has devoted substantial time, effort, and expense to develop its good and services under Nfinity's Marks. As a result, Nfinity has achieved significant recognition for Nfinity's Marks, and Nfinity's business is successful and constantly expanding.

29.    Through Nfinity's widespread and continuous use of Nfinity's Marks, in connection with Nfinity's goods and services, Nfinity's Marks have acquired strong recognition and tremendous goodwill among Nfinity's customers in the cheerleading industry.

30.    As a result of Nfinity's widespread advertising and significant commercial success, Nfinity's Marks are well recognized by consumers in the relevant consuming public—*i.e.*, the cheerleading industry—in connection with Nfinity's goods and services.

31.    To further protect its rights in Nfinity's Marks, Nfinity applied for and received U.S. Trademark Registration No. 4,769,183 for the NFINITY CHAMPIONS LEAGUE mark (the '183 Registration) for "arranging and

conducting cheerleading competitions all the aforementioned services to be related to or associated with cheerleading and/or cheerleading competitions" in International Class 41 and U.S. Trademark Registration No. 6,783,861 for the WE ARE THE LEAGUE mark (the '861 Registration) for "bags, namely, athletic bags, duffel bags, tote bags and backpacks" in International Class 18 and "clothing, namely, shirts, T-shirts, sports bras, sweatshirts, jackets, shorts, and tights" in International Class 25 (hereafter, collectively, "Nfinity's Registered Marks").

32.    True and correct copies of the registration certificates for Nfinity's Registered Marks are attached at **Exhibits A and B**.

33.    The '183 and '861 Registrations are valid, subsisting, unrevoked, and uncancelled and Nfinity is the owner thereof.

34.    The '183 and '861 Registrations constitute constructive notice to all persons and parties, including Varsity, of Nfinity's ownership and exclusive rights in Nfinity's Registered Marks in U.S. interstate commerce.

35.    The '183 Registration constitutes *prima facie* evidence of the validity of and Nfinity's right to use the NFINITY CHAMPIONS LEAGUE mark in U.S. interstate commerce in connection with the goods and services covered by the registration.

B.    VARSITY AND ITS UNLAWFUL ACTIVITIES

36.    On information and belief, Varsity has been a long-time direct competitor of Nfinity within the cheerleading industry.

37.     On information and belief, Varsity previously operated under the name Varsity Spirit Corporation.

38.     On information and belief, Varsity offers for sale, sells, and distributes cheerleading- and dance-related apparel and merchandise, including, but not limited to, shoes, top clothing items (such as shirts, sports bras, and sweatshirts), bottom clothing items (such as leggings, shorts and footed tights), bags (such as backpacks, tote bags, and duffel bags), accessories, and poms.

39.     On information and belief, Varsity had knowledge of Nfinity's Marks prior to Varsity's first use of any LEAGUE-formative marks.

40.     On March 24, 2014, Nfinity's related company Champions League Productions-2014, LLC entered into a Limited Release of Rights for Film or Television with Varsity to allow Nfinity to "photograph, film, videotape, and record Varsity products worn by cheerleaders and cheerleading coaches bearing one or more trademarks owned by Varsity … at CLP's Nfinity Champions League competition, to be conducted on April 6, 2014, and to use the results and proceeds thereof" in the production and release of the "Nfinity Champions League Cheerleading Event (2014)" documentary.

41.     On March 18, 2015, Nfinity's related company Champions League Productions-2015, LLC entered into a Limited Release of Rights for Film or Television with Varsity to allow Nfinity to "photograph, film, videotape, and record Varsity products worn by cheerleaders and cheerleading coaches bearing one or more trademarks owned by Varsity … at CLP's Nfinity Champions League competition, to be conducted on March 21, 2015, and to use the results and proceeds

thereof" in the production and release of the "Nfinity Champions League 2 Cheerleading Event (2015)" documentary.

42.     True and accurate copies of the aforementioned releases are attached hereto at **Exhibits C & D**.

43.     Thus, on information and belief, since at least as early as 2014, Varsity was aware of Nfinity's Marks.

44.     On information and belief, despite Varsity's knowledge of Nfinity's Marks, on March 16, 2022 Varsity filed U.S. Trademark Applications Serial Nos. 97/314,896 and 97/314,876 for the word and design marks "THE LEAGUE BY VARSITY ALL STAR" in connection with "entertainment services, namely, producing cheerleading and dance competitions and events" in International Class 41 (collectively "Varsity's Applications"), as shown below:



*Varsity's U.S. Trademark*          *Varsity's U.S. Trademark*
*Application No. 97/314,876*        *Application No. 97/314,896*

45.     True and accurate copies of Varsity's Applications are attached hereto at **Exhibits E & F**.

46.     Varsity filed Varsity's Applications under Section 1(b) of the Trademark Act, 15 U.S.C. § 1(b), representing therein that Varsity had a *bona fide* intention to use the marks in commerce for the described services.

13

47.     On information and belief, the aforementioned Varsity's Applications were executed by Burton Brillhart as its Chief Legal Officer.

48.     On information and belief, despite Varsity's knowledge of Nfinity, its cheerleading and dance competitions and events, its apparel, and Nfinity's Marks, Mr. Brillhart falsely declared in Varsity's Applications, under penalty of invalidation of Varsity's Applications that "…no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive…"

49.     On February 16, 2023, Nfinity filed a Notice of Opposition with the Trademark Trial and Appeal Board ("TTAB") of the U.S. Patent & Trademark Office ("USPTO") opposing Varsity's Applications. *Nfinity IP, LLC v. Varsity Spirit LLC*, Opposition No. 91283481 (the "Board proceeding").

50.     Discovery in the Board proceeding remains ongoing.

51.     In the Board proceeding, Nfinity deposed John Newby as corporate representative of Varsity under Rule 30(b)(6).

52.     On information and belief, and as a result of Mr. Newby's testimony, Varsity does not have an intent to use the marks Varsity's Applications in connection with "entertainment services, namely, producing cheerleading and dance competitions and events" in International Class 41.

53.     On information and belief, and as a result of Mr. Newby's testimony, Varsity instead intends to use the marks in Varsity's Applications in connection with entertainment services, namely, a "points race" designed to reward program

14

participants who participate in cheerleading and dance competitions and events (hereinafter "Varsity's points race").

54.    On information and belief, and as a result of Mr. Newby's testimony, Varsity also uses the marks in Varsity's Applications on apparel and other goods sold by Varsity, such as sweatshirts and t-shirts.

55.    The marks in Varsity's Applications used in connection Varsity's points race and on apparel and other goods are referred to herein collectively as the "Infringing Marks."

56.    On information and belief, according to Varsity's website at varsity.com/all-star/competitions/the-league, Varsity's points race is described as "a season-long points race that emphasizes the importance of competitions throughout the regular season."

57.    On information and belief, Varsity uses the Infringing Marks in connection with Varsity's points race to include the results of dozens of cheerleading competitions, including as an incentive for an event called "Battle Under the Big Top" scheduled for December 14–15, 2024 in College Park, Georgia.

58.    On information and belief, Varsity advertises many, if not all, of the cheerleading competitions for which incentives are offered in Varsity's points race on Varsity's website at tv.varsity.com/events.

59.    On information and belief, Varsity promotes "The League Standings" on Varsity's website, tv.varsity.com/standings, to track the results and leaderboard associated with individual teams in Varsity's points race.

60.     On information and belief, Varsity has produced and released on its YouTube channel videos within a series titled "The League Weekly Series," which Varsity describes as its "all new weekly video series about The League by Varsity All Star" that provides updates on "the latest news around The League" relating to Varsity's points race.

61.     On information and belief, Varsity markets, advertises, and sells participation in Varsity's points race through, among other channels, the social media channels Nfinity also uses.

62.     On information and belief, Varsity has used the Infringing Marks in connection with Varsity's points race on various social media platforms, including Facebook (facebook.com/VarsitySpirit/), Instagram (instagram.com/varsityallstar/), and YouTube (youtube.com/@VarsitySpirit).

63.     On information and belief, the foregoing social media platforms are the same social media platforms used by Nfinity to promote its goods and services in connection with Nfinity's Marks.

64.     On information and belief, Varsity markets, offers, and sells Varsity's points race to consumers and industry participants who also participate in Nfinity's cheerleading and dance competitions and events under Nfinity's Marks.

65.     On information and belief, given the shared consumer base that is targeted by both Nfinity and Varsity, a reasonable consumer could associate Nfinity's Marks with Varsity's points race.

66.     Varsity is not, and has never been, affiliated with, sponsored, or licensed by Nfinity to use Nfinity's Marks.

67.     Varsity never has obtained permission to use or license Nfinity's Marks, or any other marks or designs confusingly similar thereto, for use on or in connection with any goods and services, including and in particular, for the production of cheerleading and dance competitions and events, for contest and incentive award programs designed to reward program participants who participate in cheerleading and dance competitions and events, or on goods such as sweatshirts and t-shirts.

### C.     The Harm to Nfinity as a Result of Varsity's Unlawful Conduct

68.     On information and belief, Varsity has intentionally and willfully directed its advertising, promotional, and sales efforts to the same classes and consumers and industries as Nfinity's customers in an effort to capitalize on Nfinity's commercial goodwill.

69.     On information and belief, Varsity has engaged in such conduct with the knowledge that the Nfinity Marks are in use by Nfinity and possess substantial commercial goodwill.

70.     Because Varsity's goods and services under the Infringing Marks are identical to or at least highly related to the goods and services Nfinity offers under Nfinity's Marks, Varsity's use of its Infringing Marks is likely to be confusing to actual and potential customers, and is likely to cause them to be deceived and to erroneously assume that the Parties' respective goods and services are in some way connected to with one another.

71.     Given Varsity's cavalier attitude toward Nfinity's intellectual property and given Nfinity's manifestly superior rights in Nfinity's Marks, Varsity puts at risk

and damage Nfinity's reputation, goodwill, and ability to market and promote its goods and services.

72.     Varsity's unauthorized use of its Infringing Marks confusingly similar to Nfinity's Marks has injured Nfinity's interests and will continue to do so unless enjoined.

73.     Specifically, Varsity has damaged and threatens to continue to damage Nfinity's rights and valuable goodwill in Nfinity's Marks and has injured and threatens to continue to injure Nfinity's right to use and license Nfinity's Marks as the exclusive indicia of origin of Nfinity's goods and services, especially its series of cheerleading and dance competitions and events and related goods.

## COUNT I

### INFRINGEMENT OF REGISTERED TRADEMARKS
### 15 U.S.C. § 1114

74.     Plaintiff incorporates herein by reference paragraphs 1–73 above.

75.     Nfinity owns valid rights in Nfinity's Registered Marks.

76.     Varsity's Infringing Marks are likely to confuse consumers within the meaning of the Lanham Act.

77.     The acts of Varsity complained of herein constitute trademark infringement of Nfinity's Registered Marks under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

78.     Nfinity has been damaged by the acts of Varsity complained of herein.

79.     In addition, Varsity's conduct, if it continues, will result in irreparable harm to Nfinity and, specifically, to the goodwill associated with Nfinity's Registered Marks, unless such conduct is enjoined.

## COUNT II

### UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
### 15 U.S.C. § 1125(a)

80.     Nfinity incorporates herein by reference paragraphs 1–73 above.

81.     Nfinity owns valid rights in Nfinity's Marks.

82.     Varsity's Infringing Marks are confusingly similar to Nfinity's Marks.

83.     Varsity's Infringing Marks and use thereof are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person within the meaning of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

84.     The acts of Nfinity complained of herein constitute unfair competition under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

85.     Nfinity has been damaged by the acts of Varsity complained of herein.

86.     Varsity has caused and, unless restrained and enjoined by this Court, will continue to cause irreparable harm, damage, and injury to Nfinity.

## COUNT III

### DECEPTIVE TRADE PRACTICES
### O.C.G.A. § 10-1-372 *et seq.*

87.     Nfinity incorporates herein by reference paragraphs1–73 above.

88.     As alleged above, Varsity's acts constitute trademark infringement and unfair competition under the Lanham Act. Accordingly, the acts of Varsity complained of herein constitute deceptive trade practices and a violation of O.C.G.A. § 10-1-372 *et seq*.

89.     Nfinity has been damaged by the acts of Varsity complained herein and is entitled to attorney's fees pursuant to O.C.G.A. § 10-1-373(b)(2).

90.     The harm to Nfinity incurred by virtue of Varsity's unlawful activities is not fully compensable via monetary remedies, but also requires injunctive relief against Varsity.

## COUNT IV

### TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION
### GEORGIA COMMON LAW

91.     Nfinity incorporates herein by reference paragraphs 1–73 above.

92.     As alleged above, Varsity's acts constitute trademark infringement and unfair competition under the Lanham Act. Accordingly, the acts of Varsity complained of herein constitute trademark infringement and unfair competition under the common law of the State of Georgia.

93.     Nfinity has been damaged by the acts of Varsity complained of herein, and with continue to suffer harm if Varsity is not otherwise enjoined by this Court from use of its Infringing Marks.

### PRAYER FOR RELIEF

WHEREFORE, Nfinity requests that the Court:

A. Enjoin Varsity from infringing Nfinity's Marks, including by ceasing and desisting from further use of the Infringing Marks and any confusingly similar mark thereto;

B. Enjoin Varsity from unfairly competing against Nfinity;

C. Enjoin Varsity from falsely representing the Infringing Marks as their own;

D. Enjoin Varsity from infringing Nfinity's rights under Georgia common law and from committing unfair and deceptive trade practices under the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-372;

E. Award Nfinity all monetary remedies to which it is entitled under the common law and the particular statutes referenced herein, including, without limitation, any and all profits realized by Varsity from the unlawful activities made the subjects of Nfinity's claims, any damages sustained by Nfinity as a result of Varsity's unlawful activities, the costs of this action, pursuant to 15 U.S.C. § 1117, and otherwise as just and appropriate under the law;

F. Award enhanced monetary remedies pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117, and Georgia statutory law;

G. Order the destruction of all infringing articles in the possession of Varsity and used pursuant to its infringing activities, pursuant to 15 U.S.C. § 1118;

H. Award Nfinity its reasonable attorneys' fees; and

I. For such other and further relief as the Court deems just.

### JURY DEMAND

Plaintiff demands a trial by jury on all issue so triable.

Respectfully submitted this 8th day of July, 2024.

s/ Charles M. Landrum III

Todd Deveau
Georgia Bar No. 219725
Charles M. Landrum III
Georgia Bar No. 312056

THOMAS | HORSTEMEYER LLP
3200 Windy Hill Rd. SE Suite 1600E
Atlanta, Georgia 30339
T: (770) 933-9500
F: (770) 951-0933

John A. Christy

SCHREEDER, WHEELER & FLINT, LLP
1100 Peachtree Street, Suite 800
Atlanta, Georgia 30309
T: (404) 954-9819
F: (404) 681-1046

*Attorneys for Plaintiff*
*Nfinity  IP, LLC*